**No. 26-5660**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

LUCY [UNKNOWN], on behalf of themselves and all those similarly situated; BENJAMIN [UNKNOWN], on behalf of themselves and all those similarly situated,

*Plaintiffs - Appellants,*

v.

JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General; JEFF LONG, in his official capacity as the Commissioner of Safety and Homeland Security for the State of Tennessee; CHARME P. ALLEN, in their official capacity as the District Attorney General for the Sixth Judicial District of Tennessee; RUSSELL JOHNSON, in his official capacity as the District Attorney General for the Ninth Judicial District of Tennessee; BRYANT C. DUNAWAY, in their official capacity as the District Attorney General for the Thirteenth District of Tennessee; JASON LAWSON, in their official capacity as the District Attorney General for the Fifteenth Judicial District of Tennessee; GLENN R. FUNK, in his official capacity as the District Attorney General for the Twentieth Judicial District of Tennessee; STACEY EDMONSON, in her official capacity as the District Attorney General for the Twenty First Judicial District of Tennessee; RAY CROUCH, in his official capacity as the District Attorney General for the Twenty Third Judicial District of Tennessee; NEIL THOMPSON, in his official capacity as the District Attorney General for the Twenty Fourth Judicial District of Tennessee; MARK EDWARD DAVIDSON, in his official capacity as the District Attorney General for the Twenty Fifth Judicial District of Tennessee; JODY PICKENS, in her official capacity as the District Attorney General for the Twenty Sixth Judicial District of Tennessee; FRED AGEE, in his official capacity as the District Attorney General for the Twenty Eighth Judicial District of Tennessee; and STEVE JOHN MULROY, in his official capacity as the District Attorney General for the Thirtieth Judicial District of Tennessee,

*Defendants - Appellees.*

On Appeal from the United States District Court
for the Middle District of Tennessee, Case No. 3:26-cv-00763
Hon. Eli Richardson

**OPENING BRIEF FOR PLAINTIFFS-APPELLANTS**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 6th Cir. R. 26.1, Plaintiffs-Appellants Lucy and Benjamin state that they do not have parent corporations, and that no publicly held corporation owns more than ten percent of any stake or stock in any of the Appellants.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .................................................... i
TABLE OF CONTENTS .................................................... ii
TABLE OF AUTHORITIES .................................................... iv
STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................................... xiv
STATEMENT OF JURISDICTION .................................................... xiv
STATEMENT OF ISSUES .................................................... xiv
INTRODUCTION .................................................... 1
STATEMENT OF THE CASE .................................................... 2
I. CONGRESS'S PERVASIVE REGULATION OF REMOVAL .................................................... 2
II. TENNESSEE'S STATE REMOVAL LAW .................................................... 7
III. PARTIES AND PROCEDURAL HISTORY .................................................... 8
SUMMARY OF THE ARGUMENT .................................................... 11
STANDARD OF REVIEW .................................................... 13
ARGUMENT .................................................... 13
I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE PRELIMINARY INJUNCTION .................................................... 13
A. Plaintiffs Have Standing .................................................... 14
i. Plaintiffs' Evidence Established That Their Removal Orders Are "Valid" And "Outstanding" .................................................... 15
ii. Plaintiffs' Have Demonstrated Injury-in-Fact .................................................... 21
B. The District Court Abused Its Discretion In Denying The Motion For Reconsideration .................................................... 25
II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AND THIS COURT SHOULD GRANT A PRELIMINARY INJUNCTION .................................................... 27
A. H.B. 1704 Is Field Preempted .................................................... 28
B. H.B. 1704 Is Conflict Preempted .................................................... 35
C. The Balance Of Equities Favors Plaintiffs .................................................... 42

D. The Court Should Afford Relief On A Classwide Basis ....................43

III. THE DISTRICT COURT ERRED IN DISMISSING THE COMPLAINT WITHOUT LEAVE TO AMEND ....................46

A. Plaintiffs' Complaint Established Standing And The District Court Erred In Dismissing For Lack Of Subject Matter Jurisdiction ....................47

B. The District Court Was Wrong To Sua Sponte Dismiss The Case Without Giving Plaintiffs Notice Or An Opportunity To Amend ....................49

C. The District Court Abused Its Discretion In Denying The Motion To Set Aside Judgment And File An Amended Complaint ....................52

CONCLUSION ....................54

CERTIFICATE OF COMPLIANCE ....................56

CERTIFICATE OF SERVICE ....................56

**TABLE OF AUTHORITIES**

*A. A. R. P. v. Trump*,
605 U.S. 91 (2025) .......... 43

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) .......... 29

*Arizona v. United States*,
567 U.S. 387 (2012) .......... *passim*

*Armstrong v. Exceptional Child Center*,
575 U.S. 320 (2015) .......... 25

*Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*,
13 F.4th 531 (6th Cir. 2021) .......... 48

*Biden v. Texas*,
597 U.S. 785 (2022) .......... 6

*Brown v. Matauszak*,
415 F. App'x 608 (6th Cir. 2011) .......... 51

*Carrier Corp. v. Outokumpu Oyj*,
673 F.3d 430 (6th Cir. 2012) .......... 13

*Catz v. Chalker*,
142 F.3d 279 (6th Cir. 1998) .......... 50

*Christian Healthcare Ctrs., Inc. v. Nessel*,
117 F.4th 826 (6th Cir. 2024) .......... 14, 23

*Chy Lung v. Freeman*,
92 U.S. 275 (1875) .......... 1, 28

*Coleman v. Gen. Motors Acceptance Corp.*,
296 F.3d 443 (6th Cir. 2002) .......... 45

*Corum v. Holston Health & Rehab. Ctr.*,
104 S.W.3d 451 (Tenn. 2003) .......... 16

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)....................................................35, 40, 41

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006)....................................................44

*Dassault Systemes, SA v. Childress*,
663 F.3d 832 (6th Cir. 2011)....................................................13

*Doe v. Sundquist*,
106 F.3d 702 (6th Cir. 1997)....................................................28

*Enriquez-Perdomo v. Newman*,
740 F. Supp. 3d 560 (W.D. Ky. 2024), *aff'd*, 149 F.3d 623 (6th Cir. 2025)....................................................19

*Ex Parte Young*,
209 U.S. 123 (1908)....................................................25

*Farmworker Ass'n of Fla., Inc. v. Moody*,
734 F. Supp. 3d 1311 (S.D. Fla. 2024)....................................................42

*First Choice Chiropractic, LLC v. DeWine*,
969 F.3d 675 (6th Cir. 2020)....................................................16

*Florida Immigrant Coal. v. Att'y Gen.*,
No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025)..............1, 33, 34, 42

*Florida Immigrant Coal. v. Uthmeier*,
780 F. Supp. 3d 1235 (S.D. Fla. 2025)....................................................1, 33, 34

*Fong Yue Ting v. United States*,
149 U.S. 698 (1893)....................................................29

*Friends of George's, Inc. v. Mulroy*,
108 F.4th 431 (6th Cir. 2024)....................................................16

*Georgia Latino All. for Hum. Rts. v. Governor of Georgia*,
691 F.3d 1250 (11th Cir. 2012)....................................................32, 34, 38

*Green Party of Tennessee v. Hargett*,
791 F.3d 684 (6th Cir. 2015)....................................................24

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) ....................................................................44

*Hines v. Davidowitz*,
312 U.S. 52 (1941)..........................................................................29, 32

*Howard v. United States*,
533 F.3d 472 (6th Cir. 2008) ....................................................................53

*Idaho Org. of Res. Councils v. Labrador*,
780 F. Supp. 3d 1013 (D. Idaho 2025) ...................................1, 33, 34

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ....................................................................44

*INS v. Chadha*,
462 U.S. 919 (1983)..........................................................................17, 19

*INS v. Yueh-Shaio Yang*,
519 U.S. 26 (1996)..................................................................................6

*Intera Corp. v. Henderson*,
428 F.3d 605 (6th Cir. 2005) .............................................................26, 51

*Iowa Migrant Movement for Just. v. Bird*,
157 F.4th 904 (8th Cir. 2025), *reh'g en banc denied*, 166 F.4th 688
(8th Cir. 2026)..........................................................................*passim*

*Jama v. ICE*,
543 U.S. 335 (2005)...................................................................4, 30, 33, 36

*Jones v. Caruso*,
569 F.3d 258 (6th Cir. 2009) ....................................................................27

*Kareem v. Cuyahoga Cnty. Bd. of Elections*,
95 F.4th 1019 (6th Cir. 2024) ..............................................................23, 24

*Kentucky v. Env't Prot. Agency*,
No. 23-5343, 2024 WL 3569525 (6th Cir. July 29, 2024) ..........................49, 50

*Kentucky v. Yellen*,
54 F.4th 325 (6th Cir. 2022) .....................................................................21

*Leary v. Daeschner*,
349 F.3d 888 (6th Cir. 2003) ....................52

*Lozano v. City of Hazleton*,
724 F.3d 297 (3d Cir. 2013) ....................29, 32

*Lucy v. Skrmetti*,
No. 3:26-cv-998, ECF Nos. 1, 6, 25 (M.D. Tenn. July 17, 2026)..........11, 23, 50

*Luna v. Bell*,
887 F.3d 290 (6th Cir. 2018) ....................26

*Make the Rd. New York v. Pompeo*,
475 F. Supp. 3d 232 (S.D.N.Y. 2020) ....................43

*Mallory v. Eyrich*,
922 F.2d 1273 (6th Cir. 1991) ....................26

*Mansour v. Gonzalez*,
470 F.3d 1194 (6th Cir. 2006) ....................20

*Martin-Marietta Corp. v. Bendix Corp.*,
690 F.2d 558 (6th Cir. 1982) ....................42

*McKay v. Federspiel*,
823 F.3d 862 (6th Cir. 2016) ....................22, 23, 25

*McKee Foods Corp. v. BFP Inc.*,
173 F.4th 242 (6th Cir. 2026) ....................21, 25

*Miller v. Davis*,
507 F.2d 308 (6th Cir. 1974) ....................52

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2002) ....................50, 53

*Mosley v. Kohl's Dep't Stores, Inc.*,
942 F.3d 752 (6th Cir. 2019) ....................47, 48

*Murphy v. NCAA*,
584 U.S. 453 (2018)....................21

*Musson Theatrical, Inc. v. Fed. Exp. Corp.*,
89 F.3d 1244 (6th Cir. 1996) ....................47

*Nasrallah v. Barr*,
590 U.S. 573 (2020)....................5, 19

*Newberry v. Silverman*,
789 F.3d 636 (6th Cir. 2015) ....................52

*Nken v. Holder*,
556 U.S. 418 (2009) (Alito, J., dissenting)....................35, 42

*Ortega Melendres v. Arpaio*,
836 F. Supp. 2d 959 (D. Ariz. 2011) ....................42

*Padres Unidos de Tulsa v. Drummond*,
785 F. Supp. 3d 993 (W.D. Okla. 2025)....................1, 33, 34

*Patel v. Mullin*,
No. 2:26-cv-00029, 2026 WL 1161509 (E.D. Ten. Apr. 29, 2026)....................20

*Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*,
822 F.2d 1390 (6th Cir. 1987) ....................21

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ....................51

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999)....................6, 35, 36

*Robinson v. Fulliton*,
140 S.W.3d 312 (Tenn. Ct. App. 2003)....................16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)....................43

*Shockley v. Mental Health Coop., Inc.*,
429 S.W.3d 582 (Tenn. Ct. App. 2013)....................16

*Trump v. Cook*,
146 S. Ct. 2234 (2026)....................25

*Turner v. Apfel*,
11 F. App'x 439 (6th Cir. 2001) ........ 13

*U.S. Student Ass'n Found. v. Land*,
546 F.3d 373 (6th Cir. 2008) ........ 13

*United States v. Adame-Orozco*,
607 F.3d 647 (10th Cir. 2010) ........ 17, 48

*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) ........ *passim*

*United States v. Curtiss-Wright Exp. Corp.*,
299 U.S. 304 (1936) ........ 28

*United States v. Doe*,
137 F.4th 1277 (11th Cir. 2025) ........ 8

*United States v. Dohou*,
948 F.3d 621 (3d Cir. 2020) ........ 4, 17

*United States v. Iowa*,
737 F. Supp. 3d 725 (S.D. Iowa 2024) ........ 1

*United States v. Sanchez-Chavez*,
No. 5:22-cr-40042-TC, 2023 WL 2045355 (D. Kan. Feb. 16, 2023) ........ 17

*United States v. South Carolina*,
720 F.3d 518 (4th Cir. 2013) ........ 38

*United States v. Texas*,
599 U.S. 670 (2023) ........ 33, 36, 37

*Uthmeier v. Florida Immigrant Coal.*,
145 S. Ct. 2872 (2025) ........ 1

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ........ 41

*Vasquez Perdomo v. Noem*,
148 F.4th 656 (9th Cir. 2025) ........ 43

*Wagenknecht v. United States*,
533 F.3d 412 (6th Cir. 2008) ....48

*Yoder v. Bowen*,
146 F.4th 516 (6th Cir. 2025) ....23, 24

*Zareck v. Corr. Corp. of Am.*,
809 F. App'x 303 (6th Cir. 2020) ....49

**Statutes**

8 U.S.C. § 1101(a)(15)(T) ....5

8 U.S.C. § 1101(a)(15)(U) ....5

8 U.S.C. § 1101(a)(27)(J) ....5

8 U.S.C. § 1101(a)(47)(B) ....3

8 U.S.C. §§ 1151-1382 ....3

8 U.S.C. § 1182(a)(6)(A)(ii) ....5

8 U.S.C. § 1182(a)(9)(A)(ii) ....20

8 U.S.C. § 1182(d)(13) ....5

8 U.S.C. § 1182(d)(14) ....5

8 U.S.C. § 1184(p)(6) ....5

8 U.S.C. § 1225 ....30

8 U.S.C. § 1225(b)(1) ....3, 30

8 U.S.C. § 1227 ....30, 31

8 U.S.C. § 1227(a) ....*passim*

8 U.S.C. § 1227(a)(1)(B) ....17, 22

8 U.S.C. § 1229a ....3, 30

8 U.S.C. § 1229a(a)(3) ....3, 30

8 U.S.C. § 1229a(b)(5) ........ 4, 20

8 U.S.C. § 1229a(c)(6) ........ 4, 20

8 U.S.C. § 1229a(c)(7) ........ 4, 20

8 U.S.C. § 1229b ........ 30

8 U.S.C. § 1229c ........ 30

8 U.S.C. § 1231 ........ 3, 30

8 U.S.C. § 1231(a)(1)-(3), (b)(1)-(3) ........ 30

8 U.S.C. § 1231(a)(1)(A) ........ 4

8 U.S.C. § 1231(a)(2)(A) ........ 4

8 U.S.C. § 1231(a)(3) ........ 4, 20, 37

8 U.S.C. § 1231(a)(5) ........ 3, 30

8 U.S.C. § 1231(b) ........ 4

8 U.S.C. § 1231(b)(3)(A) and Note ........ 4, 19

8 U.S.C. § 1252(a)(1) ........ 30

8 U.S.C. § 1252(a)(5) ........ 4, 17

8 U.S.C. § 1252(b)(7)(A) ........ 17

8 U.S.C. § 1253 ........ *passim*

8 U.S.C. § 1253(a) ........ 17

8 U.S.C. § 1253(a)(1) ........ 20

8 U.S.C. § 1254a ........ 5

8 U.S.C. § 1255 ........ 5

8 U.S.C. § 1326 ........ 7, 31

8 U.S.C. § 1326(a)(1) ........ 20

8 U.S.C. § 1326(d) ....................17

28 U.S.C. § 1292(a)(1) ....................27

28 U.S.C. § 1653 ....................52

Department of Homeland Security Appropriations Act 2010, Pub. L. No. 111–83, 123 Stat. 2142 (2009) ....................36

H.B. 1704 § 1 ....................8, 31

H.B. 1704 § 1(b) ....................8, 24

H.B. 1704 § 1(c) ....................8

H.B. 1704 § 2 ....................7

Tenn. Code Ann. § 1-3-105(b) (2025) ....................16

Tenn. Code Ann. § 40-35-111(e)(1) (2025) ....................8

**Other Authorities**

*Outstanding*, Merriam-Webster, https://www.merriam-webster.com/dictionary/outstanding (last visited Sept. 10, 2026) ....................19

Tennessee House Bill 1704 ("H.B. 1704") ....................*passim*

U.S Citizenship & Immigration Servs., *USCIS Policy Manual*, vol. 1, pt. 1, ch. 2, available at https://www.uscis.gov/policy-manual/volume-1-part-i-chapter-2#footnotelink-4 ....................19, 20

*Valid judgment*, Black's Law Dictionary (12th ed. 2024) ....................16

*Valid*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/valid (last visited September 10, 2026) ....................16

**Rules**

Fed. R. Civ. P. 15(a)(1) ....................9

**Regulations**

8 C.F.R. § 208.16 ....................4

8 C.F.R. § 208.18 ....................................................................................4

8 C.F.R. § 236.21(c)(1) ....................................................................................18, 20

8 C.F.R. § 241.6(a)....................................................................................5

8 C.F.R. § 241.15 ....................................................................................4

8 C.F.R. § 274a.12(a)(10) ....................................................................................5

8 C.F.R. § 1000.23(b) ....................................................................................20

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs support oral argument in this case. It involves the critical issue of federal supremacy over immigration regulation and the erroneous denial of Plaintiffs' standing. Plaintiffs believe the Court's consideration of these issues would benefit from oral argument.

## STATEMENT OF JURISDICTION

Plaintiffs sued Tennessee government officials for declaratory and injunctive relief in equity, invoking the district court's jurisdiction under 28 U.S.C. § 1331. The district court denied preliminary injunctive relief on June 26, 2026 and *sua sponte* dismissed the action. This Court has jurisdiction 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES

1. Did the district court incorrectly conclude that Plaintiffs lack standing because they failed to establish that their removal orders are "valid" and "outstanding" as required under Section 1 of H.B. 1704?
2. Did the district court abuse its discretion in denying Plaintiffs' motion for preliminary injunctive relief and motion for reconsideration?
3. Did the District Court err in *sua sponte* dismissing the complaint without affording Plaintiffs notice or leave to amend?

4. Did the District Court abuse its discretion in denying Plaintiffs' motion to set aside judgment and file an amended complaint?

## INTRODUCTION

For 150 years, the Supreme Court has made clear that the regulation of noncitizen removal is a matter committed exclusively to the federal government. *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875); *Arizona v. United States*, 567 U.S. 387, 399-403 (2012). Tennessee's House Bill 1704 ("H.B. 1704") casts aside this settled precedent and seizes for the State removal authority that Congress has provided exclusively to the federal government. In so doing, it threatens Plaintiffs and thousands of other noncitizens in Tennessee with arrest, prosecution, and imprisonment simply for going about their daily lives. Every other court to have considered state immigration laws of this type has found them preempted. *See, e.g.*, *Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904 (8th Cir. 2025) ("*Iowa*"), *reh'g en banc denied*, 166 F.4th 688 (8th Cir. 2026); *Padres Unidos de Tulsa v. Drummond*, 785 F. Supp. 3d 993 (W.D. Okla. 2025); *Florida Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235 (S.D. Fla. 2025); *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013 (D. Idaho 2025) ("*IORC*"); *United States v. Iowa*, 737 F. Supp. 3d 725 (S.D. Iowa 2024); *see also Florida Immigrant Coal. v. Att'y Gen.*, No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025) ("*FLIC*") (denying stay); *Uthmeier v. Florida Immigrant Coal.*, 145 S. Ct. 2872 (Mem) (2025) (same). H.B. 1704 should have met the same fate.

But the district court slammed the courthouse doors on Plaintiffs before they could even get out of the gate. Without holding argument or otherwise giving Plaintiffs an opportunity to address its questions, it held that Plaintiffs lacked standing because they failed to establish that their removal orders are "valid" and "outstanding" under H.B. 1704, and denied the preliminary injunction on this basis. In so holding, the court ignored copious evidence in the record—including the final removal orders themselves, decisions from exhausted appeals, and other documents produced as part of expedited discovery. It then took the extraordinary step of *sua sponte* dismissing the case for minor perceived pleading deficiencies, entering judgment the same day and depriving Plaintiffs of the ability to amend as of right. But that's not all. When Plaintiffs attempted to address the court's concerns by filing timely motions to reconsider, set aside judgment and file an amended complaint, the court instead pushed them to needlessly file a new, nearly identical, case and then denied their post-judgment motions. This Court should reverse, grant the preliminary injunction, and vacate the dismissal.

## STATEMENT OF THE CASE

### I. CONGRESS'S PERVASIVE REGULATION OF REMOVAL

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394. Accordingly, in the Immigration and Nationality Act ("INA"), Congress created a

complex system that governs removal from the United States. *See generally* 8 U.S.C. §§ 1151-1382.

On the civil side of this system, "Congress has specified which aliens may be removed from the United States and the procedures for doing so." *Arizona*, 567 U.S. at 396. These removal proceedings are the "sole and exclusive procedure" for determining whether a noncitizen may be removed. 8 U.S.C. § 1229a(a)(3). In full removal proceedings,[1] a noncitizen is charged with grounds of inadmissibility or removability and, even if found inadmissible or removable, can seek certain forms of relief from removal, such as humanitarian protections or protections for special populations such as children and victims of crimes and trafficking.

If an Immigration Judge finds a noncitizen inadmissible or removable and does not grant relief from removal, they can issue a removal order, which becomes "final" when the Board of Immigration Appeals ("BIA") affirms it or the time to appeal lapses. 8 U.S.C. § 1101(a)(47)(B).

Congress has extensively regulated noncitizens with such final removal orders. 8 U.S.C. § 1231, which addresses "[d]etention and removal of aliens ordered

[1] Congress established several different forms of removal proceedings, including full removal proceedings with trial-like processes subject to administrative and judicial appeals, 8 U.S.C. § 1229a, expedited removal proceedings for noncitizens who have recently entered the country, *id.* § 1225(b)(1), and reinstatement of removal proceedings for noncitizens who unlawfully reenter the United States after a prior deportation, *id.* § 1231(a)(5).

removed," provides for a 90-day "removal period" "[d]uring" which "the Attorney General shall detain the alien." *Id.* §§ 1231(a)(1)(A), (2)(A). The statute further provides that "[i]f the alien does not leave or is not removed within the removal period, the alien . . . shall be subject to supervision . . ." including "periodic[]" check-ins with immigration officers for those released from custody. *Id.* § 1231(a)(3). It also addresses, *inter alia*, the country to which a noncitizen is to be removed. *See id.* § 1231(b); 8 C.F.R. §§ 208.16, 208.18, 241.15; *Jama v. ICE*, 543 U.S. 335, 341 (2005) (describing these regulations).

A noncitizen may challenge the validity of a removal order by seeking judicial review of the order through a petition for review with a U.S. court of appeals. 8 U.S.C. § 1252(a)(5); *see United States v. Dohou*, 948 F.3d 621, 625 (3d Cir. 2020). And a noncitizen may move the Executive Branch to reopen or reconsider a final order of removal for a number of reasons, like if a noncitizen did not receive a hearing notice and was ordered removed *in absentia*, or if there is new evidence of danger in the country of removal, or if the noncitizen has become eligible for immigration relief. 8 U.S.C. §§ 1229a(b)(5), (c)(6), (c)(7).

Moreover, some individuals with final removal orders are protected from removal to particular countries through withholding of removal and relief under the Convention Against Torture, 8 U.S.C. § 1231(b)(3)(A) and Note. Many people live and work in the United States indefinitely with both a final order of removal and

such humanitarian protections. *See, e.g.*, *Nasrallah v. Barr*, 590 U.S. 573, 577 (2020) (noncitizen had been ordered removed but granted relief under the Convention Against Torture, blocking his removal); *see also* 8 C.F.R. § 274a.12(a)(10) (employment authorized for noncitizens granted withholding of removal).

Congress has also permitted noncitizens with removal orders to apply for various forms of immigration relief, including status for unaccompanied children, 8 U.S.C. § 1101(a)(27)(J); and for certain victims of crime, trafficking, and domestic violence, *id.* §§ 1101(a)(15)(T), (U), 1182(a)(6)(A)(ii), (d)(13), (14). These processes can lead to permanent immigration status, *see id.* § 1255, as well as interim benefits pending adjudication of applications for immigration relief, including work authorization and deferred action. *See, e.g.*, *id.* § 1184(p)(6). Qualifying noncitizens may also apply for various forms of discretionary protection from removal, such as Deferred Action for Childhood Arrivals ("DACA"), Deferred Enforced Departure ("DED"), or Temporary Protected Status ("TPS"), though these protections do not make their removal order invalid or change that it is outstanding. *Id.* § 1254a; *see also* 8 C.F.R. § 241.6(a) (authorizing DHS to "grant a stay of removal or deportation" to "an alien under a final order"); Ben Harrington, Cong. Rsch Serv., R45158, *An Overview of Discretionary Reprieves from Removal: Deferred Action, DACA, TPS, and Others* (Apr. 10, 2018).

More generally, Congress has provided federal officials with extensive discretion throughout the removal process. Indeed, a "principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396; *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484-86 (1999) ("*AADC*"). Federal officials "decide whether it makes sense to pursue removal at all." *Arizona*, 567 U.S. at 396. And "[a]t each stage" "in the deportation process," federal officials have "the discretion to abandon the endeavor." *AADC*, 525 U.S. at 483, 486. To start, federal officials choose among the several removal processes Congress established. *See Biden v. Texas*, 597 U.S. 785, 792-93 (2022). Once removal procedures have been initiated, federal officials decide whether to extend relief to otherwise removable noncitizens. *See, e.g.*, *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996).

Critically, once a final removal order has been issued, federal officials "may . . . decline to execute a final order of deportation." *AADC*, 525 U.S. at 484. Federal officials may exercise this discretion "for humanitarian reasons or simply for [their] own convenience." *Id.* They may prioritize some removals, such as of noncitizens with serious criminal convictions, while deprioritizing others. For instance, there may be "some [noncitizens] (for instance, a veteran, college student, or someone assisting with a criminal investigation) who federal officials determine should not be removed." *Arizona*, 567 U.S. at 408. As a result of these choices, many

noncitizens with final removal orders may remain in the country for extended periods, or indefinitely.

In addition to this civil removal system, Congress has also regulated removal in the criminal context. For example, Congress has made it a crime for certain noncitizens with removal orders to reenter the United States. 8 U.S.C. § 1326. Congress has also made it a crime for certain noncitizens with removal orders to fail to depart the United States. *Id.* § 1253. As with the civil system, Congress placed all discretion to prosecute these crimes in the hands of federal officials. *See Iowa*, 157 F.4th at 924.

## II. TENNESSEE'S STATE REMOVAL LAW

H.B. 1704 is a blatant attempt to regulate removal and supersede the complex federal system that governs it.[2] As relevant here, Section 1 makes it a state crime for "an alien against whom a valid final order of removal is outstanding by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a)" to "intentionally fail[] or refuse[] to depart from" Tennessee within 90 days from the

[2] In addition to the failure to depart crime that is the subject of this lawsuit, H.B. 1704 also makes it a crime for certain noncitizens with removal orders or who departed while such an order was outstanding to reenter Tennessee. H.B. 1704 § 2. The statutory predicates triggering § 2 have not been met and the provision is not yet in effect; thus, Plaintiffs do not challenge H.B. 1704 § 2 in this litigation.

date of the final order of removal under administrative processes or judicial review. H.B. 1704 § 1.[3]

Tennessee's new failure to depart crime is a Class A misdemeanor, which carries a maximum sentence of 11 months and 29 days in jail and a maximum fine of $2,500. H.B. 1704 § 1(b); Tenn. Code Ann. § 40-35-111(e)(1) (2025). Section 1 provides that, if the person "has not exhausted all available paths under federal law for challenging the final order of removal," the court "shall grant a stay of the criminal proceedings" until the person has exhausted those available paths. H.B. 1704 § 1(c). However, H.B. 1704 does not provide any affirmative defenses, including for noncitizens who are in the process of appealing their orders of removal or who have sought or received federal immigration relief. H.B. 1704 went into effect on July 1, 2026.

## III. PARTIES AND PROCEDURAL HISTORY

Plaintiffs are two individuals subject to arrest and prosecution under H.B. 1704, who represent a putative class of all noncitizens who are subject to Section 1 of H.B. 1704. They are proceeding under pseudonyms Lucy and Benjamin.

---

[3] Section 1227(a), referenced in H.B. 1704, describes noncitizens "in and admitted to the United States" who fall within various "classes of deportable [noncitizens]." 8 U.S.C. § 1227(a). While this language refers to noncitizens who have been "admitted" to the United States, at least one court has read similar language to also apply to noncitizens who have not been admitted, such as those who entered the country without inspection. *See United States v. Doe*, 137 F.4th 1277 (11th Cir. 2025).

On June 4, 2026, Plaintiffs filed a lawsuit challenging the law as preempted, R.1, and moved for a preliminary injunction, R.6, class certification, R.7, and to proceed under pseudonyms, R.8. A few days later, Defendants sought, and the district court granted over Plaintiffs' objection, extraordinary expedited discovery into class certification. Mot. for Expedited Disc., R.16; Order, R.22. On June 26, 2026, the district court denied the motion for preliminary injunction. Op., R.47. It held that Plaintiffs did not have standing because they "have not shown evidentially (or even alleged) that they are in fact subject to removal orders that are both valid and outstanding as required for individuals to engage in conduct proscribed by Section 1 of H.B. 1704." *Id.*, PageID#723-24. It further explained that, while evidence in the record "does suggest that the Plaintiffs are subject to final removal orders," "the terms 'valid' and 'outstanding' are *not* synonymous with the term 'final.'" *Id.*, PageID#724 & n.24. The district court also *sua sponte* dismissed the complaint, finding that Plaintiffs had "failed to *allege* that they are subject to valid and outstanding removal orders." *Id.*, PageID#727. The court denied the class certification motion as moot, but granted leave to proceed pseudonymously. *Id.*, PageID#734, 737. Final judgment was entered the same day, foreclosing any opportunity for Plaintiffs to amend their complaint pursuant to Fed. R. Civ. P. 15(a)(1). Order, R.48.

On July 8, 2026, Plaintiffs moved to set aside judgment and file an amended complaint, R.52, sought reconsideration of the denial of preliminary relief, and alternatively renewed their request for a preliminary injunction, R.55. Given that H.B. 1704 was already in effect, they sought expedited consideration of these motions. Mot. to Expedite, R.56. While Plaintiffs maintained that the facts in the record established that their removal orders are valid and outstanding, they offered additional evidence and briefing on the issue. Mot. for Reconsideration, R.55, PageID#796-97. On July 9, 2026, the district court ordered Plaintiffs to explain, *inter alia*, "why . . . Plaintiffs elected not to file a new action . . . and instead chose to seek expedited relief . . . in this closed case." Order, R.57, PageID#814. Plaintiffs filed a response on July 13, 2026. R.58.

On July 14, 2026, the district court denied Plaintiffs' motion to expedite, set a briefing schedule for the motion to set aside judgment, and stayed briefing on the motion for reconsideration. Order, R.60. The court explained that it "does not find compelling Plaintiffs' explanation as to why they did not file a new action in lieu of filing the Motion to Set Aside Judgment and Motion for Reconsideration." *Id.*, PageID#829 n.3. It noted that, "although the [motions] remain pending, Plaintiffs certainly may file a new action now given that the instant action remains closed." *Id.*, PageID#831.

On July 17, 2026, following the course of action strongly suggested by the district court, Plaintiffs filed a new complaint and motion for preliminary injunction, and the case was assigned to the same judge. *See Lucy v. Skrmetti*, No. 3:26-cv-998, ECF Nos. 1, 6 (M.D. Tenn. July 17, 2026) ("*Lucy II*"). On July 20, 2026, "[i]n light of Plaintiffs filing a new action challenging Section 1 of H.B. 1704," the district court denied the pending motions to set aside judgment and for reconsideration as moot. Order, R.65, PageID#1458.

On July 24, 2026, Plaintiffs appealed the district court's denials of the preliminary injunction and class certification motions, dismissal of their original action, and the denials of the motion to set aside judgment and the motion for reconsideration. Notice of Appeal, R.67.

On August 11, 2026, the district court denied Defendants' motion to stay proceedings in *Lucy II*. No. 3:26-cv-998, ECF No. 25. Plaintiffs' fully-briefed motions for preliminary injunction and class certification are pending before the court, and Defendants have moved to dismiss the case. *Id*., ECF No. 42.

## SUMMARY OF THE ARGUMENT

*Every* court to have considered a law like H.B. 1704 has rejected it. Here, the district court never even reached the merits question. Instead, it denied the preliminary injunction because it concluded—without holding argument and without affording Plaintiffs an opportunity to respond to the court's concerns—that Plaintiffs

failed to establish that their removal orders are valid and outstanding and thus lacked standing. This Court should reverse, and grant the preliminary injunction.

As to standing, the record evidence at the time of dismissal established that Plaintiffs' removal orders are valid and outstanding, and Plaintiffs' otherwise met their burden of establishing that their conduct is "arguably proscribed" by H.B. 1704 and that they face a "credible threat of enforcement."

The district court further erred in *sua sponte* dismissing the case without giving Plaintiffs notice or leave to amend. Plaintiffs adequately alleged that their removal orders are "valid" and "final," and to the extent the court disagreed, it was required to notify Plaintiffs before *sua sponte* dismissing and, at the very least, should have dismissed with leave to amend rather than entering final judgment and closing the case.

Plaintiffs attempted to correct the purported standing deficiencies by filing a motion for reconsideration and a motion to set aside judgment and file an amended complaint. The district court denied these motions, preferring instead that Plaintiffs file an entirely new, nearly identical case. This too was error.

On the merits, Plaintiffs are likely to succeed in their argument that H.B. 1704 is field and conflict preempted. Decades of unbroken precedent makes clear that there is a dominant federal interest in removal, and that Congress has extensively regulated the field. And H.B. 1704 is conflict preempted because it undermines the

discretion Congress vested in the federal government over removal decisions, and allows Tennessee state officials to unilaterally enforce immigration law.

H.B. 1704 will irreparably harm Plaintiffs, who face arrest and imprisonment under the law. While the district court denied the class certification motion as moot, the proposed class meets the Rule 23 requirements and this Court may grant relief to a putative class of individuals subject to H.B. 1704.

## STANDARD OF REVIEW

This Court "review[s] de novo the legal conclusions made by the district court, and . . . review[s] its factual findings for clear error." *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 380 (6th Cir. 2008). Decisions regarding injunctive relief are reviewed for abuse of discretion, *id*., as are denials of reconsideration and setting aside judgment. *See Turner v. Apfel*, 11 F. App'x 439, 440 (6th Cir. 2001); *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 841 (6th Cir. 2011).

Dismissal under Rule 12(b)(1) is reviewed *de novo*, accepting as true the complaint's well-pleaded allegations and drawing all reasonable inferences in the plaintiffs' favor. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

## ARGUMENT

### I. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING THE PRELIMINARY INJUNCTION

### A. Plaintiffs Have Standing

To establish standing in a pre-enforcement suit, Plaintiffs must show that (1) they have "an intent 'to engage in a course of conduct' arguably 'affected with a constitutional interest,'" (2) their intended future conduct is "arguably 'proscribed by a statute,'" and (3) "there is 'a credible threat' of the statute's enforcement." *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 843 (6th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Plaintiffs satisfy all three prongs.

However, the district court incorrectly concluded that Plaintiffs failed to show "that they have an intent to engage in conduct that is arguably proscribed by Section 1 of H.B. 1704" because they "have not shown evidentially (or even alleged) that they are in fact subject to removal orders that are both *valid* and *outstanding*." Op., R.47, PageID#723. The court explained that the evidence in the record "does suggest that the Plaintiffs are subject to *final* removal orders," but "the terms 'valid' and 'outstanding' are *not* synonymous with the term 'final.'" *Id.*, PageID#724 & n.24. It also acknowledged that it did not "have a clear view as to what the terms 'valid' and 'outstanding' precisely mean for the purposes of Section 1 of H.B. 1704" and that "it is certainly *possible* that Plaintiffs are subject to valid removal orders." *Id.*, PageID#724 n.24, 25.

The district court reached this conclusion despite the State barely developing the argument—confining it to just one paragraph across two briefs. *See* Defs' Opp. PI, R.25, PageID#270-71; Defs' Opp. Class Cert., R.35, PageID#381. The court did not hold argument on any of the motions nor give Plaintiffs any other opportunity to address its concerns. To the contrary, it dismissed the entire case on this incorrect technical basis. When Plaintiffs attempted to address the court's concerns through various post-dismissal motions, the court effectively refused to entertain them, instead pushing Plaintiffs to pointlessly file a new, largely identical, case.

This was error.

**i. Plaintiffs' Evidence Established That Their Removal Orders Are "Valid" And "Outstanding"**

The district court held that neither Plaintiffs' declarations nor "the already large record in this action" established "that removal orders to which Plaintiffs are subject are valid and outstanding." Op., R.47, PageID#724-25. It reached this conclusion despite acknowledging that, during discovery, Benjamin "stated that his removal order is 'valid'" and both Plaintiffs produced "certain documents regarding [their] removal orders," including "the removal orders themselves." *Id.*, PageID#725 n. 27 (cleaned up). The court waved away this evidence as "passing and conclusory allusions to Plaintiffs' removal orders" that, while suggesting that the orders are "(potentially)" valid and outstanding, does not establish "that these orders *actually are* valid and outstanding." *Id.*

The district court got it wrong and applied a more exacting standard than is required at this stage. "[A]t the pre-enforcement stage, [Plaintiffs] need not prove conclusively that [their] intended course of conduct violates [H.B. 1704] but only that it is *arguably* proscribed by the statute." *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 437 (6th Cir. 2024). The extensive evidence in the record readily establishes that Plaintiffs' orders are valid and outstanding, and that their conduct is "arguably proscribed" by H.B. 1704.

H.B. 1704 does not define these terms, so the court must apply the "general rules of statutory construction as embraced by" Tennessee courts, *First Choice Chiropractic, LLC v. DeWine*, 969 F.3d 675, 680 (6th Cir. 2020) (quotation omitted), and give the terms their "natural and ordinary meaning," *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 454 (Tenn. 2003) (quotation omitted); *see* Tenn. Code Ann. § 1-3-105(b) (2025). To do so, the court may draw on "dictionary definitions," *Shockley v. Mental Health Coop., Inc.*, 429 S.W.3d 582, 591 (Tenn. Ct. App. 2013), and interpretations of comparable federal laws, *see Robinson v. Fulliton*, 140 S.W.3d 312, 318 (Tenn. Ct. App. 2003).

The INA does not define "valid" removal order, but removal orders—like all judgments—are presumed valid when issued by a competent tribunal following proper procedure. *See, e.g.*, *Valid judgment*, Black's Law Dictionary (12th ed. 2024) ("A judicial act rendered by a court having jurisdiction over the parties and over the

subject matter in a proceeding in which the parties have had a reasonable opportunity to be heard."); *Valid*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/valid (last visited September 10, 2026) ("having legal efficacy or force"). A "final deportation order enjoys a presumption of regularity," *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010), and there is no question that Plaintiffs' removal orders are "final." Op., R.47, PageID#724. *See also United States v. Sanchez-Chavez*, No. 5:22-cr-40042-TC, 2023 WL 2045355, at *2 (D. Kan. Feb. 16, 2023) (a "removal order is presumed valid").

To challenge a removal order's validity, a noncitizen must "attack the deportation order itself," *INS v. Chadha*, 462 U.S. 919, 938 (1983), by seeking judicial review of the final order of removal through a petition for review with a United States court of appeals. 8 U.S.C. § 1252(a)(5); *see also Dohou*, 948 F.3d at 625 (linking validity of a removal order to judicial review). For example, a noncitizen may argue in their removal proceedings and subsequent appeals or petitions for judicial review that they did not engage in the conduct described in the Notice to Appear. And individuals charged under 8 U.S.C. § 1253(a), the federal failure to depart crime, may challenge the validity of their removal order in the criminal proceeding only "[i]f the validity of an order of removal has not been judicially decided." 8 U.S.C. § 1252(b)(7)(A); *see also id*. § 1326(d) (similar).

The record before the district court at the time of its denial and dismissal order established that Plaintiffs' removal orders are valid. Plaintiffs were ordered removed in 2003 under § 1227(a)(1)(B), and their cases were consolidated together along with the removal case of Lucy's daughter and ex-husband. Sealed Entry, R.63, PDF page 209-21.[4] Plaintiffs appealed the decision to the BIA, which affirmed. Sealed Entry, R.63, PDF page 225. They then petitioned for review in the Sixth Circuit, which affirmed the removal order. Sealed Entry, R.63, PDF page 226-31.

Plaintiffs received no relief from removal in their removal proceedings other than voluntary departure. Sealed Entry, R.63, PDF page 221 (immigration judge granting voluntary departure in 2003, but entering "an alternate order of removal to [Plaintiffs' home country] if they fail to comply"). The stay of voluntary departure period terminated in 2006 after the Sixth Circuit denied Plaintiffs' petition for review. Sealed Entry, R.63, PDF page 226-31. Plaintiffs have not departed the country since that time, and there have been no further stays of the voluntary departure period. *See* Interrogatory Responses, R.62-1, PageID#1068-69; *Id*. PageID#1078-79. Because they remained in the country, their removal order automatically took effect. Sealed Entry, R.63, PDF page 221.

---

[4] Exhibit 63 consists of sealed discovery materials which counsel cannot access and therefore cannot cite Page ID#.

Thus, nothing in Plaintiffs' removal proceedings, nor anything that has happened since, undermines the validity of their removal orders. Though Benjamin has received deferred action under DACA, this is merely a form of prosecutorial discretion that does not render his removal order invalid. *See, e.g.*, 8 C.F.R. § 236.21(c)(1) (DACA "does not confer any right or entitlement to remain in or reenter the United States"); U.S Citizenship & Immigration Servs., *USCIS Policy Manual*, vol. 1, pt. 1, ch. 2, available at https://www.uscis.gov/policy-manual/volume-1-part-i-chapter-2#footnotelink-4 ("Deferred action is not a permanent solution to an alien's removability or a mechanism for an alien to remain in the United States indefinitely."); *Enriquez-Perdomo v. Newman*, 740 F. Supp. 3d 560, 571 (W.D. Ky. 2024) (explaining that DACA recipient's removal order remained "valid"), *aff'd*, 149 F.3d 623 (6th Cir. 2025). Nor does Lucy's pending application under the Violence Against Women Act ("VAWA")—which has not yet been approved—render her removal order invalid. Indeed, her removal order and order of supervision remain in place. Lucy Decl., R.6-1, PageID#79-81; Sealed Entry, R.63, PDF page 232.[5]

---

[5] Individuals who have obtained certain forms of relief from removal, such as withholding of removal and relief under the Convention Against Torture ("CAT"), 8 U.S.C. § 1231(b)(3)(A) and Note, may be protected from removal to particular countries. However, even those who obtain withholding of removal or CAT protection are still subject to a "valid" removal order because an immigration judge's ruling on such relief "does not affect the validity of the final order of removal." *Nasrallah*, 590 U.S. at 582; *see also Chadha*, 462 U.S. at 938 (seeking such relief is

Plaintiffs' removal orders are also outstanding, since they "contin[ue] to exist." *See Outstanding*, Merriam-Webster, https://www.merriam-webster.com/dictionary/outstanding (last visited Sept. 10, 2026). The term "outstanding" as used in Title 8, *e.g.*, 8 U.S.C. §§ 1182(a)(9)(A)(ii), 1326(a)(1), 1253(a)(1), refers to removal orders that continue to exist and have not been reopened, vacated, or executed. *See, e.g., Mansour v. Gonzalez*, 470 F.3d 1194, 1199 (6th Cir. 2006) (indicating that a removal order ceases to be outstanding once executed); 8 U.S.C. § 1229a(b)(5), (c)(6), (c)(7) (reopening of removal orders); 8 C.F.R. § 1000.23(b) (similar).

As discussed above, Plaintiffs' removal orders have not been reopened or vacated. Nor have their removal orders been executed. Both Lucy and Benjamin have remained in the United States since removal orders were entered against them. Additionally, Lucy must check in with federal officials under an order of supervision, which can only be ordered if a noncitizen has a removal order and "does not leave or is not removed within the removal period." *See* 8 U.S.C. § 1231(a)(3). And Benjamin's deferred action under DACA does not undermine the conclusion that his removal order is outstanding. *See, e.g., Patel v. Mullin*, No. 2:26-cv-00029, 2026 WL 1161509, at *3 (E.D. Ten. Apr. 29, 2026) (noting that noncitizen had an

---

"not inconsistent with" having valid removal order). In any event, Plaintiffs' removal orders have not been withheld or deferred under CAT.

"outstanding removal order" despite "active deferred action status"); *see also* 8 C.F.R. § 236.21(c)(1); USCIS Policy Manual, vol. 1, pt. 1, ch. 2. Nor does Lucy's pending VAWA application render her removal order not outstanding.

In sum, nothing in the evidentiary record undermines the presumption that Plaintiffs' final removal orders are valid and outstanding, and the district court was wrong to conclude otherwise.

**ii. Plaintiffs' Have Demonstrated Injury-in-Fact**

Plaintiffs also satisfy the remaining criteria for standing.

*First*, they have a "federal right to be free from" impermissible state regulation. *Murphy v. NCAA*, 584 U.S. 453, 479 (2018). Thus, their "[c]onduct is arguably affected with a constitutional interest by virtue of its federal preemption claim, which is basically constitutional in nature because it derives its force from the operation of the Supremacy Clause." *McKee Foods Corp. v. BFP Inc.*, 173 F.4th 242, 258 (6th Cir. 2026) (cleaned up).

*Second*, Plaintiffs' conduct is "arguably proscribed" by H.B. 1704. "[T]he express statutory language" of H.B. 1704 "clearly renders [the statute] applicable" to Plaintiffs and "provide[s] a basis for prosecution." *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987); *see also Kentucky v. Yellen*, 54 F.4th 325, 337 (6th Cir. 2022) (finding conduct arguably proscribed where it was covered by a "*plausible* interpretation of the statute").

Both Lucy and Benjamin fall into one of the categories in § 1227(a) because they were admitted on visas. Lucy Decl., R.6-1, PageID#79; Benjamin Decl. R.6-2, PageID#84; Sealed Entry, R.63, PDF page 221 (finding Plaintiffs deportable under § 1227(a)(1)(B) (present in violation of law)). For those admitted on a visa, like Plaintiffs, *all* possible grounds of deportability are laid out in § 1227(a). *See* 8 U.S.C. § 1227(a) (describing "classes of deportable aliens").

Lucy and Benjamin also have valid, outstanding, and final orders of removal. R.6-1, PageID#79-80; Benjamin Decl., R.6-2, PageID#84-85. As discussed above, Plaintiffs established that their removal orders were valid and outstanding, and neither Defendants nor the district court suggested that the removal orders are not final. *See* Defs' Opp. PI, R.25, PageID#270 ("Plaintiffs generally allege that they have final orders of removal"); Op., R.47, PageID#730 (finding that "Plaintiffs have adequately alleged that" their "removal orders are final").

Plaintiffs also established that they intend to remain in Tennessee after the 90-day removal period—which elapsed long ago. Lucy's removal order became final in 2005, yet she has lived in Tennessee for 25 years and will continue to do so. Lucy Decl., R.6-1, PageID#79-81. Benjamin was ordered removed as a teenager, is now

35 years old, and intends to stay in Tennessee to complete his training program. Benjamin Decl., R.6-2, PageID#84-85.[6]

*Third*, Plaintiffs face a credible threat of enforcement. *See McKay v. Federspiel*, 823 F.3d 862, 868-69 (6th Cir. 2016). Under *McKay*'s "fact-bound approach," *Christian Healthcare Centers, Inc.*, 117 F.4th at 851, a plaintiff establishes a credible threat of enforcement when they can point to "some combination" of: (1) "past enforcement against plaintiffs or others"; (2) "enforcement warning letters"; (3) "an attribute of the challenged statute that makes enforcement easier"; and (4) "defendant's refusal to disavow enforcement of the challenged statute . . .". *McKay*, 823 F.3d at 868-69.

State officials "have not disavowed enforcement" of H.B. 1704. *Yoder v. Bowen*, 146 F.4th 516, 525 (6th Cir. 2025); *see also Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1027 (6th Cir. 2024) (finding credible threat of enforcement where, *inter alia*, plaintiff faced imprisonment for violating statute and defendant did not disavow enforcement). To the contrary, and despite discovery into Plaintiffs' immigration histories, Defendants continue to refuse to disavow enforcement of the law—both generally and against Plaintiffs.

---

[6] Plaintiffs are also over 18 years of age. Lucy Decl., R.6-1, PageID#79; Benjamin Decl., R.6-2, PageID#84.

As to past enforcement, Defendants have represented in related litigation that H.B. 1704 is in effect and is being enforced, just not against Plaintiffs (yet) or individuals "identified by Plaintiffs." *See Lucy II*, No. 3:26-cv-998, Status Conf. Tr. 10:22–11:4, August 5, 2026. But even if there were no past enforcement or warning letters, that would not defeat standing here. This Court has concluded that, despite the absence of past enforcement, plaintiffs established a credible fear of prosecution where the challenged law "clearly prohibited the activities" in which plaintiffs sought to engage and the state "refus[ed] to disavow enforcement." *Kareem*, 95 F.4th at 1023-24 (collecting cases); *see also Green Party of Tennessee v. Hargett*, 791 F.3d 684, 696 (6th Cir. 2015) (finding standing where defendants have "not enforced or threatened to enforce [the] statute against plaintiffs" or anyone else, but "also have not explicitly disavowed enforcing it in the future"). Here, the State has "not clearly disavowed enforcement" of the "conduct" in which Plaintiffs will engage simply by remaining in Tennessee. *Yoder*, 146 F.4th at 525; *id*. (credible threat of enforcement established even where defendants stated they have "no plans 'to prosecute Plaintiffs or anyone else'" for engaging in prohibited conduct).

The threat of enforcement is further heightened by the unusual statutory attributes of H.B. 1704. Unlike many criminal laws, H.B. 1704 requires Plaintiffs to engage in no new conduct to be subject to arrest and prosecution—just continuing to live their everyday lives in Tennessee. A violation of H.B. 1704 is a Class A

misdemeanor that carries a maximum sentence of 11 months and 29 days in jail. H.B. 1704 § 1(b). "The threat of such punishment significantly heightens" the risk to Plaintiffs. *Kareem*, 95 F.4th at 1025 (considering extent of criminal punishment as part of credible threat analysis). And H.B. 1704 is extraordinary because it seeks to claim for Tennessee a power that has been understood to be exclusively federal for well over a century, and "contains no potential for exemptions that make the threat of enforcement remote." *Yoder*, 146 F.4th at 525.

Thus, Plaintiffs have "satisfied a sufficient combination of the *McKay* factors to illustrate a credible threat of enforcement." *McKee Foods Corp.*, 173 F.4th at 259 (finding standing where some, but not all, *McKay* factors were satisfied).[7]

### B. The District Court Abused Its Discretion In Denying The Motion For Reconsideration

Shortly after the district court issued its order denying preliminary relief, Plaintiffs sought to address the court's concerns by moving for reconsideration and, in the alternative, a renewed motion for preliminary injunction and class certification. Mot. for Reconsideration, R.55. While Plaintiffs maintained that the

[7] In addition to standing, Plaintiffs have a cause of action to sue under the longstanding equitable practice reflected in *Ex Parte Young*, 209 U.S. 123 (1908), which makes clear that plaintiffs threatened with preempted prosecutions can sue in equity. *See, e.g.*, *Armstrong v. Exceptional Child Center*, 575 U.S. 320, 327 (2015) (reaffirming such traditional "power of federal courts of equity"); *Trump v. Cook*, 146 S. Ct. 2234, 2251 n.2 (2026); *McKee Foods Corp.*, 173 F.4th at 257. And courts have expressly recognized that equitable relief is available to enjoin preempted state immigration laws. *See, e.g.*, *Iowa*, 157 F.4th, at 918.

evidence in the record at the time of the denial and dismissal was sufficient to establish standing, they included additional evidence and legal argument directly responsive to the district court's concerns. Plaintiffs also moved for expedited consideration, R.56, which the district court denied. In so doing, it explained that it "does not find compelling Plaintiffs' explanation as to why they did not file a new action in lieu of" seeking reconsideration. Order, R.60, PageID#829 n.3. It further observed that "the Motion for Reconsideration is especially likely to be denied because . . . the circumstances relevant to Plaintiffs' request for a preliminary injunction have changed in the meantime, thus counseling in favor of the Court considering a new and updated request for a preliminary injunction rather than revisiting the previously denied one." *Id.*, PageID#830 n.3. As urged by the court, Plaintiffs filed a new action, which prompted the district court to deny the motion for reconsideration as moot. Order, R.65.

This denial was an abuse of discretion. *See Intera Corp. v. Henderson*, 428 F.3d 605, 619-20 (6th Cir. 2005). The district court should have exercised its "inherent power" to "reconsider [its] interlocutory order[][,]" *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991), because there was "a need to correct a clear error or prevent manifest injustice" and "new evidence available." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (citation omitted).

For the reasons stated above, *supra* Sec. I.A.i., the district court erred in determining that Plaintiffs' evidence did not establish that their removal orders are valid and outstanding. Further, even if the evidence in the record was insufficient, Plaintiffs submitted additional evidence confirming that their orders were valid and outstanding. First, they submitted supplemental declarations underscoring that, since Plaintiffs' petitions for review were denied by the Sixth Circuit in 2006, they have not challenged their removal orders. Lucy Supp. Decl., R.55-1, PageID#801; Benjamin Supp. Decl., R.55-2, PageID#804. Second, they submitted new evidence, not previously available, that Lucy's daughter, whose case was governed by the same removal order as Lucy and Benjamin, was deported to Plaintiffs' country of origin. Lucy Supp. Decl., R.55-1, PageID#801; Benjamin Supp. Decl., R.55-2, PageID#805. This recent deportation underscores that Lucy and Benjamin's removal orders, too, remain outstanding.

The district court got it wrong when it found Plaintiffs lacked standing. It should therefore have granted Plaintiffs' motion to reconsider that erroneous decision, instead of further delaying relief by imposing unnecessary new procedural hoops.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS AND THIS COURT SHOULD GRANT A PRELIMINARY INJUNCTION

While the district court denied the preliminary injunction for lack of standing without reaching the merits, this Court can resolve the substantive preemption claims

and grant the injunction. "28 U.S.C. § 1292(a)(1), which governs appeals of interlocutory orders granting or denying injunctions, provides courts of appeal with jurisdiction to reach the merits, at least where there are no relevant factual disputes and the matters to be decided are closely related to the interlocutory order being appealed." *Jones v. Caruso*, 569 F.3d 258, 269 (6th Cir. 2009) (collecting cases).

Here, the district court already engaged in factfinding as to standing and developed a robust record for this Court to review. Adjudicating the preemption claim and evaluating the equities does not require additional fact development. Thus, nothing prevents the Court from deciding, "in the interest of judicial economy," the "clearly defined issue[]" of preemption of state removal laws and granting the preliminary injunction. *Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997) (deciding merits of case in the first instance where the "legal issues have been briefed and the factual record does not need expansion").

**A. H.B. 1704 Is Field Preempted**

Field preemption may be inferred from either a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject[,]" or "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it[.]'" *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). When it comes to removal, both tests are satisfied.

The federal interest in removal is unquestionably dominant. As the Supreme Court has long recognized, the federal government's ability to "exclude or to expel" noncitizens is "an inherent and inalienable right of every sovereign and independent nation[.]" *Fong Yue Ting v. United States*, 149 U.S. 698,711 (1893); *id.* at 714 ("Congress . . . ha[s] the right . . . to expel aliens . . . or to permit them to remain"); *see also Chy Lung*, 92 U.S. at 280; *Arizona*, 567 U.S. at 409. States, by contrast, are not endowed with such "powers of external sovereignty." *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 316-18 (1936). Thus, it is well-established that "the removal process is entrusted to the discretion of the Federal Government." *Arizona*, 567 U.S. at 409; *see Hines v. Davidowitz*, 312 U.S. 52, 62 & n.10 (1941) (noting "the supremacy of the national power . . . over. . . deportation").

This Court and sister circuits have also recognized this dominant federal interest in removal. This Court has explained that "[t]he key sovereign with authority and 'solicitude' with respect to immigration is the National Government, not the states." *Arizona v. Biden*, 40 F.4th 375, 386-87 (6th Cir. 2022). Accordingly, the states do not have "the authority to exclude individuals" or "to prevent people from entering or leaving their territory[.]" *Id.* at 387. Other circuits have concluded the same. *See Lozano v. City of Hazleton*, 724 F.3d 297, 315-16 (3d Cir. 2013) ("The INA's comprehensive scheme plainly precludes state efforts, whether harmonious or conflicting, to regulate residence in this country based on immigration status.")

(citation modified); *United States v. Alabama*, 691 F.3d 1269, 1293 (11th Cir. 2012) ("The power to expel aliens has long been recognized as an exclusively federal power.").

Consistent with this dominant federal interest, Congress has established a highly "pervasive" regime to govern removal from the United States. *Arizona*, 567 U.S. at 399 (internal quotation marks omitted); *see also Alabama*, 691 F.3d at 1294 (discussing "Congress's comprehensive statutory framework governing alien removal"). Through the INA, Congress has enacted an exceptionally detailed, complex, and finely reticulated regulatory framework governing the removal of noncitizens. *See, e.g.*, 8 U.S.C. §§ 1225, 1227, 1229a, 1229b, 1229c, 1231. Congress established multiple forms of removal proceedings, *id.* § 1229a (full removal proceedings), *id.* § 1225(b)(1) (expedited removal), *id.* § 1231(a)(5) (reinstatement of removal), and provided that they shall be "the sole and exclusive procedure" for determining whether a noncitizen may be removed. *Id.* § 1229a(a)(3).

Congress has extensively regulated the presence, detention, status, and possible punishment of noncitizens with final orders of removal—the same population that Tennessee seeks to regulate here. 8 U.S.C. § 1231, which governs "[d]etention and removal of aliens ordered removed," includes an extremely detailed set of regulations that set forth, among other things, the time period for removal, detention rules for people with removal orders, supervision of people with removal

orders, and countries to which a person can be removed. *See* 8 U.S.C. § 1231(a)(1)-(3), (b)(1)-(3); *Jama*, 543 U.S. at 341. Congress has also provided a detailed process by which noncitizens can petition for federal court review of their removal order. *See* 8 U.S.C. § 1252(a)(1). As explained above, *supra* Statement of the Case, Congress has also provided for removal orders to be reopened even after they are final, and numerous forms of relief from removal that are specifically available to noncitizens with final orders of removal. Congress has further provided that a noncitizen's order of removal shall be reinstated through a special procedure, 8 U.S.C. § 1231(a)(5), and Congress has criminally regulated noncitizens with final removal orders, 8 U.S.C. §§ 1253, 1326. Finally, Congress has provided federal immigration officials with "broad discretion" in executing removal orders, which is a "principal feature of the removal system." *Arizona*, 567 U.S. at 396.

Through these many intricate and interrelated provisions, Congress has established "a full set of standards governing" removal, which is "designed as a 'harmonious whole.'" *Arizona*, 567 U.S. at 401 (quoting *Hines*, 312 U.S. at 72). Because the field of removal is preempted, "[s]tates may not enter" this field "in any respect," and "even complementary state regulation is impermissible." *Id*. at 401-02.

H.B. 1704, however, intrudes into this preempted field. It expressly predicates a state crime on conduct related to a federal removal order, explicitly referring to 8 U.S.C. § 1227, a federal statute regarding removal. It requires noncitizens to "depart

from this state" under threat of criminal enforcement. H.B. 1704 § 1. And it specifically regulates the same population that Congress has extensively regulated in the INA—noncitizens with final removal orders—with respect to the same subject matter—their presence, status, and punishment. H.B. 1704 thus represents an extraordinary intrusion into the field of removal.

That H.B. 1704 criminalizes failure to depart from Tennessee—and not the United States—does not render it permissible. It attaches a state law criminal penalty to federal removal orders, intruding into the field of removal. Because "[s]tates may not enter" a preempted field "in *any* respect," *any* regulation in the field of removal is prohibited. *Arizona*, 567 U.S. at 401-02 (emphasis added); *see also Hines*, 312 U.S. at 59-69 (state law solely concerned with registration of noncitizens in Pennsylvania was nonetheless preempted by comprehensive federal scheme). Courts have accordingly held that a state's attempts to "unilaterally determine" that certain noncitizens "cannot live within the state's territory" are preempted. *Alabama*, 691 F.3d at 1295; *see also Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1264 (11th Cir. 2012) ("*GLAHR*") (similar).

Moreover, even state laws that indirectly regulate removal are preempted. *See, e.g.*, *Lozano*, 724 F.3d at 315-18 (preempted municipal housing regulations were "thinly veiled attempt to regulate residency" even though they did not "control actual . . . expulsion from [the City] or the United States"); *Alabama*, 691 F.3d at 1294-95

(state law limits on noncitizens' ability to enter into contract were "preempted by the inherent power of the federal government to regulate immigration"). Far from implicit, H.B. 1704 directly regulates removal and is an even greater intrusion into the federal scheme because it requires noncitizens to leave the state or face criminal penalties.

Because regulating removal is for the federal government, not the states, "even complementary state regulation is impermissible." *Arizona*, 567 U.S. at 401-02. For example, in *Arizona*, the Supreme Court invalidated Section 3 of Arizona's law, which criminalized failure to carry a federal noncitizen registration form. *Id.* at 400-03. Although Section 3 mirrored and even incorporated federal law, the Supreme Court held that Congress had already occupied the field of noncitizen registration, which implicated the federal government's external sovereign authority. *Id.* The same reasoning applies with greater force to the field of removal. The decision to expel a noncitizen is even more sensitive than alien registration because "[r]emoval decisions . . . 'implicate our relations with foreign powers' and require consideration of 'changing political and economic circumstances.'" *Jama*, 543 U.S. at 348 (citation omitted); *see United States v. Texas*, 599 U.S. 670, 679 (2023) (similar); *Arizona*, 567 U.S. at 409-10 (similar).

Following the teachings of *Arizona*, several courts have found field preempted state criminal laws that tracked federal immigration crimes. *See, e.g.*, *FLIC*, 2025

WL 1625385, at *3 (denying stay of injunction against state illegal entry and reentry law on field preemption grounds); *Padres Unidos de Tulsa*, 785 F. Supp. 3d at 1005-07 (finding state illegal entry and reentry crimes that tracked federal law to be field preempted); *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1258-62 (similar); *see also IORC*, 780 F. Supp. 3d at 1039-43 (analyzing law under field and conflict preemption principles).

And for good reason: as the Supreme Court observed in *Arizona*, if a state law that regulated removal "were valid, every State could give itself independent authority to prosecute federal violations, diminishing the Federal Government's control over enforcement[,] . . . detracting from the integrated scheme of regulation created by Congress," and allowing prosecution "even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies." *Arizona*, 567 U.S. at 402 (citations omitted); *see also GLAHR*, 691 F.3d at 1264 (similar). Indeed, if one state could decide to expel these noncitizens from its borders, so could any other state—leading to a patchwork of regulation that would undermine Congress's comprehensive federal scheme. And this concern is far from hypothetical—over the past three years, nine states have adopted their own regulations of entry and removal, which courts around the country have held preempted. *See, e.g.*, *Iowa*, 157 F.4th at 920-24; *FLIC*, 2025 WL 1625385, at *3; *Padres Unidos de Tulsa*, 785 F. Supp. 3d at 1005-07; *IORC*, 780 F. Supp. 3d

at 1039-43; *Fla. Immigrant Coal.*, 780 F. Supp. 3d at 1258-62. H.B. 1704 is similarly preempted.

### B. H.B. 1704 Is Conflict Preempted

H.B. 1704 is also conflict preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in multiple respects. *Arizona*, 567 U.S. at 399 (quoting *Hines,* 312 U.S. at 67).

*First*, H.B. 1704 frustrates Congress's statutory scheme by undermining the "broad discretion" entrusted to federal immigration officials. *Arizona*, 567 U.S. at 396; *see Iowa*, 157 F.4th at 921; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (state sanctions law preempted where it was "obstacle to the accomplishment of Congress's full objectives under the federal [statute]," including "its delegation of effective discretion to the President").

As explained above, "[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396. In particular, federal officials "decide whether it makes sense to pursue removal at all." *Id.* And, as is especially relevant here, federal officials decide whether and when to execute final removal orders. A noncitizen with a final removal order may move the Executive to reopen or reconsider the order and may apply for various forms of relief from removal. Federal officials have discretion to grant these requests or simply to decline to execute the final removal order. "[E]xecuting removal orders" is

"prosecution of [a] stage [] in the deportation process" and "[a]t each stage the Executive has discretion to abandon the endeavor." *AADC*, 525 U.S. at 483; *see also Nken v. Holder*, 556 U.S. 418, 439-40 (2009) (Alito, J., dissenting) ("Once an order of removal has become final, it may be executed at any time"—but "the Executive Branch" may still "stay its own hand"). Federal officials may also grant deferred action, whereby they formally decline to carry out a removal. *AADC*, 525 U.S. at 484. And federal officials may also decide when to employ criminal penalties for failing to depart the United States. *See* 8 U.S.C. § 1253.

In other words, Congress has vested federal officials with a wide range of tools so they can balance various policy and humanitarian concerns and decide whether removal best serves the national interest. *See Iowa*, 157 F.4th at 921-22 (collecting cases). Their exercise of this discretion "implicates not only normal domestic law enforcement priorities but also foreign-policy objectives." *Texas*, 599 U.S. at 679 (cleaned up); *see also Jama*, 543 U.S. at 348 (similar); *Arizona*, 567 U.S. at 409 (similar). "Returning an alien to his own country may be deemed inappropriate," even where he is removable, if, for example, "[t]he foreign state [is] mired in civil war, complicit in political persecution, or enduring conditions that create a real risk that the alien or his family will be harmed upon return." *Arizona*, 567 U.S. at 396-97. "Discretion in the enforcement of immigration law [also] embraces immediate human concerns," *id.* at 396, and federal officials may exercise

their discretion "for humanitarian reasons or simply for [their] own convenience," *AADC*, 525 U.S. at 484. *See, e.g.*, Department of Homeland Security Appropriations Act 2010, Pub. L. No. 111–83, 123 Stat. 2142, 2149 (2009) (requiring the Secretary of Homeland Security to "prioritize the identification and removal of aliens convicted of a crime by the severity of that crime").

Balancing these competing priorities, federal officials prioritize the removal of some noncitizens while allowing other noncitizens with final removal orders to remain in the country. In exercising the discretion Congress has vested in them, federal officials employ civil tools, such as civil detention and deportation and alternatives to detention such as check ins with federal officers, as well as criminal tools, such as 8 U.S.C. § 1253. Federal officials use these tools to advance their strategic goals; for example, in the case of a noncitizen whose removal raises humanitarian concerns, federal officials might allow the noncitizen to remain in the country and check in with federal officers but not criminally charge the noncitizen with failing to depart the country. *See* 8 U.S.C. § 1231(a)(3) (noting that noncitizens who remain in the country after the 90-day removal period may be released from custody on supervision and subject to periodic check-ins). These tools allow the federal government to balance complex domestic and international policies and priorities, and Congress made clear that those choices must remain exclusively

federal. *See Arizona*, 567 U.S. at 408; *Iowa*, 157 F.4th at 919-23; *Texas*, 599 U.S. at 679.

H.B. 1704 runs roughshod over this federal discretion because it requires noncitizens with final removal orders to immediately depart Tennessee or face criminal punishment. This requirement is in clear conflict with Congress's specific decision to allow noncitizens with final removal orders to seek certain forms of relief, as well as Congress's decision to allow federal officials to exercise their discretion and permit noncitizens with final removal orders to remain. *See Arizona*, 567 U.S. at 396-97, 407-09 (citing these as reasons why unilateral state action is preempted); *Iowa*, 157 F.4th at 921-24 (same); *Alabama*, 691 F.3d at 1295 (statute conflict preempted where state had "unilaterally determine[d] that any alien unlawfully present in the United States cannot live within the state's territory"); *United States v. South Carolina*, 720 F.3d 518, 531-32 (4th Cir. 2013) (provisions preempted where they "improperly place in the hands of state officials the nation's immigration policy, and strip federal officials of the authority and discretion necessary in managing foreign affairs"); *GLAHR*, 691 F.3d at 1265 (similar, emphasizing discretion of federal prosecutors over immigration crimes). H.B. 1704 "empowers [Tennessee] to contradict the policy decisions of Congress, and the policy decisions made with the discretion that Congress grants to federal

immigration officials, frustrating U.S. law enforcement and foreign policy interests." *Iowa*, 157 F.4th at 923.

For example, in Benjamin's case, the federal government has exercised its discretion by granting him deferred action through DACA, which permits people like Benjamin, who were brought to this country as children, to remain here in order to avoid the harsh result of their removal. Benjamin Decl., R.6-2, PageID#84-85. But H.B. 1704 would upend this federal discretion, forcing Benjamin to leave his home of two decades because of a removal order the federal government has chosen not to execute at this time. Or consider the case of Lucy, who is at risk of prosecution under H.B. 1704 even though she has a pending application for federal immigration relief under VAWA—which Congress explicitly permits noncitizens with final removal orders to seek—and has been instructed to check in with federal officials every month in Memphis. Lucy Decl., R.6-1, PageID#80. Under H.B. 1704, Lucy faces conflicting instructions from federal and state officials: federal officials have directed her to check in with them in Memphis, while H.B. 1704 requires her to leave Memphis under threat of criminal punishment. These conflicts exemplify the broader problem: by purporting to transfer discretion from federal to state hands, H.B. 1704 disrupts Congress's scheme, in which federal officials decide whether, when, and how to enforce or execute removal orders.

*Second*, and relatedly, H.B. 1704 allows Tennessee to unilaterally enforce immigration law "without any input from the Federal Government." *Arizona*, 567 U.S. at 408. Letting Tennessee unilaterally arrest, detain, and prosecute noncitizens with removal orders for failing to depart would allow it to "achieve its own immigration policy." *Id.* This contradicts the core teaching of *Arizona* that undergirds every part of its analysis: States cannot enforce federal immigration law on their own, without federal "direction and supervision." *Id*. at 413.

Section 6 of the challenged Arizona law, which, like H.B. 1704, allowed state officers to make warrantless arrests of noncitizens, was preempted because it allowed "unilateral state action" that disregarded the "significant complexities involved in enforcing federal immigration law" and usurped the federal government's ability to exercise discretion. *Id.* at 407-10. Section 3, the provision criminalizing failure to register, was similarly preempted because, like H.B. 1704, it allowed unilateral state prosecutions for what were effectively violations of federal law. Such "independent authority to prosecute" would "diminish the federal government's control over enforcement," upend the "careful framework Congress adopted," and "frustrate federal policies." *Id*. at 402 (cleaned up). And Section 2(B), which directed state police officers to contact immigration authorities during traffic stops, would have been preempted if it allowed unilateral detention "without federal direction and supervision." *Id*. at 413. Thus, the through line of the entire *Arizona*

decision is that federal law does not allow "unilateral state action" in the field of immigration enforcement. *Id.* at 410. And if unilateral arrests alone were enough for preemption of Section 6 in *Arizona*, then unilateral arrests, detention, and prosecution under H.B. 1704 must be preempted as well.

Even though H.B. 1704 tracks some of the language in 8 U.S.C. § 1253, that does not save it from conflict preemption. H.B. 1704 conflicts with Congress's extensive regulatory removal regime. *Iowa*, 157 F.4th at 922 (rejecting argument that state law regulating removal was not conflict preempted where it mirrored federal counterpart). As in *Crosby*, "Congress clearly intended the federal Act to provide the [Executive] with flexible and effective authority." 530 U.S. at 374. And, just as in that case, Tennessee's "unyielding application" of criminal sanctions whenever it sees fit "undermines the [executive's] intended statutory authority by making it impossible" for the federal executive to chart the course it thinks best in particular circumstances. *Id*. at 377; *see Arizona*, 567 U.S. at 396-97, 408.

In sum, in H.B. 1704, Tennessee has asserted "state authority could be exercised without any input from the Federal Government about whether [removal] is warranted in a particular case," which "would allow the State to achieve its own immigration policy" and target noncitizens "who federal officials determine should not be removed." *Arizona*, 567 U.S. at 408. A state cannot simply expel people from its borders. "[Tennessee] has taken it upon itself to unilaterally determine that any

alien [with a final removal order] cannot live within the state's territory, regardless of whether the Executive Branch would exercise its discretion to permit the alien's presence. This is not a decision for [Tennessee] to make." *Alabama*, 691 F.3d at 1295. H.B. 1704 is conflict preempted.

### C. The Balance Of Equities Favors Plaintiffs

Plaintiffs will suffer irreparable harm by being stopped, arrested, prosecuted, and imprisoned under a preempted state statute. Lucy Decl., R.6-1, PageID#80-81; Benjamin Decl., R.6-2, PageID#85. It is well established that the threat of criminal prosecution under a preempted state law constitutes irreparable harm for purposes of a preliminary injunction. *See Iowa*, 157 F.4th at 928-29 (citing *GLAHR*, 691 F.3d at 1269); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (similar); *Farmworker Ass'n of Fla., Inc. v. Moody*, 734 F. Supp. 3d 1311, 1338 (S.D. Fla. 2024) (similar).

The balance of the equities also tips decisively in Plaintiffs' favor, and the injunction is strongly in the public interest. *See Nken*, 556 U.S. at 435 (third and fourth factors merge when defendants are governmental actors).

In contrast to the severe harms faced by Plaintiffs, "[f]ederal officials of course already enforce immigration law—and many [Tennessee] law-enforcement agencies have entered into agreements with the Department of Homeland Security that allow local police to enforce federal immigration law." *FLIC*, 2025 WL

1625385, at *6. The availability of such cooperation with the federal government thus "ameliorates [Defendants'] concern." *Iowa*, 157 F.4th at 929. Moreover, the "[f]rustration of federal statutes and prerogatives [is] not in the public interest." *Alabama*, 691 F.3d at 1301. Nor is "perpetuat[ing] the unconstitutional application of a statute." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

On the other side of the ledger, the harms to the putative class are significant. They face arrest, prosecution, and separation from their families and communities. *See Farmworker Ass'n of Fla., Inc.*, 734 F. Supp. 3d at 1339 (finding that separation from families constitutes irreparable harm). Even individuals who are not subject to H.B. 1704 will reasonably fear being targeted and racially profiled. *See Ortega Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979-980 (D. Ariz. 2011). H.B. 1704 also risks eroding the public trust that governments have worked to create with migrant communities and that is integral to public safety. *See Make the Rd. New York v. Pompeo*, 475 F. Supp. 3d 232, 270 (S.D.N.Y. 2020) (enjoining public charge rule because of chilling effect the rule had on immigrants seeking services).

### D. The Court Should Afford Relief On A Classwide Basis

The district court denied Plaintiffs' class certification motion as moot. Op., R.47, PageID#734. This Court may reverse and direct the court to grant certification in the first instance. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559

U.S. 393, 398 (2010) (noting "categorical rule" that plaintiff satisfying Rule 23 requirements can "pursue his claim as a class action"). Alternatively, it may afford preliminary relief before certification to a putative class of the thousands of noncitizens in Tennessee who face arrest and prosecution under H.B. 1704.[8] *See A. A. R. P. v. Trump*, 605 U.S. 91, 98 (2025) (issuing "temporary relief to a putative class"); *accord Vasquez Perdomo v. Noem*, 148 F.4th 656, 688 (9th Cir. 2025) (explaining that "even before a class is certified—'provisionally' or otherwise—courts may properly issue temporary injunctive relief to the putative class . . . "). Classwide relief is particularly appropriate here because the parties have already engaged in discovery regarding class certification, the motion was fully briefed below, and there is an extensive record for this Court to draw on.

The proposed class plainly satisfies Rule 23's requirements. Defendants never contested numerosity below, and class members are likely to be in the hundreds if not thousands. Class Cert. Mot., R.7, PageID#91-93. As to commonality, there are multiple "common contention[s] . . . central to the validity of . . . the claims" in this case. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 458 (6th Cir. 2020). Plaintiffs and class members suffer the same injury (prosecution under a preempted

---

[8] Plaintiffs' proposed class definition is:

> All noncitizens 18 years or older who, now or in the future, are aliens against whom a valid final order of removal has been outstanding for 90 days or longer by reason of being a member of any of the classes described in 8 U.S.C. § 1227(a), and who intentionally fail or refuse to depart from Tennessee.

statute), raise the same claims (H.B. 1704 is field and conflict preempted), and seek the same relief (an injunction preventing the State from prosecuting them under the law). None of these common contentions are affected by any individualized considerations regarding whether and what federal immigration relief class members may be seeking. *Cf. In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). For largely the same reasons, typicality is also satisfied. Plaintiffs' claims turn on the same legal questions—namely, whether H.B. 1704 is field and conflict preempted—and no factual differences in immigration histories undermine that. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) ("[t]ypicality is satisfied despite the different factual circumstances" among class).

The class also satisfies Rule 23(b) because there is "homogeneity in the rights and interests of the class" because each member asserts the right to be free from arrest, detention, and prosecution under a preempted state law, and the class is "without any conflicting interests between the members of the class." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447-48 (6th Cir. 2002) (citations omitted).

Both Lucy and Benjamin are adequate class representatives; at the very least, Defendants concede adequacy as to Benjamin and that class counsel is adequate. Defs' Opp. Class Cert., R.35, PageID#390. That is enough to find adequacy for class certification.

Thus, the Court should grant relief as to the putative class. Alternatively, it should grant the preliminary injunction and remand to the district court to determine the scope of relief in the first instance.

## III. THE DISTRICT COURT ERRED IN DISMISSING THE COMPLAINT WITHOUT LEAVE TO AMEND

The district court erred when it held that Plaintiffs failed to plausibly allege standing and *sua sponte* dismissed the case without affording Plaintiffs an opportunity to amend. It noted that Plaintiffs "have adequately alleged that they are subject to removal orders" that "are final," Op., R.47, PageID#730, but concluded that "they have not asserted anywhere in the Complaint (even in wholly conclusory fashion) that those orders are *valid* and *outstanding* within the meaning of Section 1 of H.B. 1704," and that they have not "alleged any *factual matter* plausibly supporting the legal conclusion" that their removal orders are valid and outstanding. *Id.*, PageID#730-31. In reaching this conclusion, it once again reiterated that it "does not currently have a clear view as to precisely what the terms 'valid' and 'outstanding' mean as used in Section 1 of H.B. 1704." *Id.*, PageID#731 n. 32.

With respect to notice and amendment, the district court concluded that, because it was dismissing without prejudice for lack of subject matter jurisdiction, it was not "required to give Plaintiffs in this action opportunity to amend their Complaint prior to" *sua sponte* dismissal. Op., R.47, PageID#733 n.35. It further noted that "Plaintiffs *did* have notice and opportunity to amend their Complaint to

address . . . deficiencies with respect to standing, given that these deficiencies were raised in" Defendants' preliminary injunction and class certification responses. *Id*. And in its subsequent order issued the same day, the court "directed" the clerk to "enter judgment under Rule 58 of the Federal Rules of Civil Procedure and close the file." Order, R.48, PageID#741.

The district court committed a series of errors, and its dismissal should be reversed upon *de novo* review by this Court.

### A. Plaintiffs' Complaint Established Standing And The District Court Erred In Dismissing For Lack Of Subject Matter Jurisdiction

Where, as here, a court evaluates a facial challenge to standing at the pleading stage, it "must accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff." *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (citation omitted). A plaintiff's burden in defeating a facial attack on subject matter jurisdiction "is not onerous." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice because in considering a motion to dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Mosley*, 942 F.3d at 756 (cleaned up).

Plaintiffs readily satisfied this permissive standard and established that their removal orders were valid and outstanding. In the complaint, Lucy alleged that she entered the country "in about 2000 on a visitor's visa," "applied for asylum," "her

application was denied," she "has a final a removal order," and "has applied" for relief under VAWA. Complaint, R.1, PageID#4. Benjamin alleged that he entered the country "on a visa," his family "applied for asylum" and "was denied," he was "ordered removed" as a teenager, and "has a final removal order." *Id.*, PageID#5.

While accepting that their removal orders are final, the district court refused to "assume" that the orders were also valid and outstanding—despite acknowledging that it is "certainly *possible*." Op., R.47, PageID#724 n.25, n.26, 730. But when considering a facial deficiency as to standing, that is precisely what the court was required to do: "presume that general allegations embrace those specific facts that are necessary to support the claim," and draw all inferences in Plaintiffs' favor. *Mosley*, 942 F.3d at 756. This is especially so because removal orders are afforded a presumption of regularity, *Adame-Orozco*, 607 F.3d at 651, and nothing in the complaint undermined that presumption. Indeed, as discussed above, the factual record before the court demonstrated that not only was it *possible* that the orders were valid and outstanding, but that was in fact the case: Plaintiffs have not attacked their removal orders since their petition for review ("PFR") was denied in 2006; they have not received any relief from their removal orders; and their removal orders have not been vacated, reopened, or executed. In light of these facts, "[a]ccepting as true the complaint's factual allegations," Plaintiffs "plausibl[y] claim[ed]" that their removal orders were valid and outstanding, and the district court erred in concluding

otherwise. *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 544 (6th Cir. 2021).

### B. The District Court Was Wrong To Sua Sponte Dismiss The Case Without Giving Plaintiffs Notice Or An Opportunity To Amend

Even if dismissal were warranted, the district court erred in *sua sponte* dismissing the action without giving Plaintiffs notice or an opportunity to amend. "As a general rule, 'a district court may not *sua sponte* dismiss a complaint . . . unless the court gives the plaintiff opportunity to amend the complaint.'" *Wagenknecht v. United States*, 533 F.3d 412, 417 (6th Cir. 2008) (citing *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999)). "Instead, a district court must usually 'notify all parties of its intent to dismiss the complaint' and 'give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended sua sponte dismissal[.]'" *Kentucky v. Env't Prot. Agency*, No. 23-5343, 2024 WL 3569525, at *1 (6th Cir. July 29, 2024) (citing *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983)) (vacating *sua sponte* dismissal for lack of standing and remanding to allow Plaintiffs to amend their complaint). *Sua sponte* dismissal for lack of subject matter jurisdiction is appropriate only in the "rarest" of circumstances—"'when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.'" *Zareck v. Corr. Corp. of Am.*, 809 F. App'x 303, 305 (6th Cir. 2020) (citing *Apple*, 183 F.3d at 479-80).

The allegations in Plaintiffs' complaint come nowhere close to meeting *Apple*'s high implausibility standard. Indeed, the district court itself noted that "it is certainly *possible* that Plaintiffs are subject to valid removal orders," Op., R.47, PageID#724 n.25, and even suggested that amendment could have cured any purported deficiencies. *Id.*, PageID#733 n.35. The *only* deficiency that the district court identified was Plaintiffs' failure to adequately allege that their removal orders are valid and outstanding. Addressing this concern by including specific allegations and factual assertions was relatively simple and straightforward, as evidenced by Plaintiffs' proposed amended complaint. Am. Compl., R.52-1. And these amendments were not futile and likely addressed the district court's concerns. *See Lucy II*, 3:26-cv-998, ECF No. 25 at 2 (court noting that "the complaint in *Lucy II* "—which is the same as the amended complaint Plaintiffs' proposed—"is materially different with respect to the very thing that got the complaint in *Lucy I* dismissed") (cleaned up).

To support its conclusion that it was not required to provide Plaintiffs notice prior to *sua sponte* dismissal, the court relied on a series of unpublished district court cases involving *pro se* plaintiffs and unsubstantiated or otherwise frivolous allegations. Op., R.47, PageID#733 n.35 (collecting cases). The court also suggested that Defendants' objections to standing afforded Plaintiffs with "notice and an opportunity to amend their Complaint." *Id*. But notice prior to *sua sponte* dismissal

must be "unambiguous." *Catz v. Chalker*, 142 F.3d 279, 286 (6th Cir. 1998). A paragraph's worth of objections in Defendants' oppositions to preliminary relief, R.25, PageID#270-71, and class certification, R.35, PageID#381, amongst hundreds of pages of briefing, hardly constitutes "unambiguous" notice. *See Kentucky*, 2024 WL 3569525, at *1 (finding that Defendants' "mere[] opposi[tion] to [preliminary injunction] motion[]" was not sufficient notice). Moreover, Plaintiffs contested Defendants' arguments and were under no "obligation to submit an amended complaint prior to district court review." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Indeed, it would contradict the text and spirit of Rule 15—which commands that leave to amend be freely given "when justice so requires"—to penalize Plaintiffs for not shifting their legal positions in response to standing arguments by Defendants—arguments with which they disagree and that this Court may likewise find meritless.

The district court compounded its error when, instead of dismissing with leave to amend, it entered final judgment. Upon dismissal, "the usual practice is to grant plaintiffs leave to amend the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004). "[I]f a complaint is vulnerable to a motion to dismiss, a district court must first permit the plaintiff to file a curative amendment, *even if* the plaintiff does *not* seek leave to amend." *Brown v. Matauszak*, 415 F. App'x 608, 615 (6th Cir. 2011) (collecting cases). This principle is "even more" imperative "in the

context of *sua sponte* dismissals." *Id*. (collecting cases). Dismissal and entry of judgment was particularly unwarranted here because Defendants had not filed an answer or Rule 12 motion, and Plaintiffs' ability to amend remained available under Rule 15(a)(1) until the moment judgment was entered.

### C. The District Court Abused Its Discretion In Denying The Motion To Set Aside Judgment And File An Amended Complaint

Plaintiffs even attempted to correct any purported pleading deficiencies after the court's erroneous *sua sponte* dismissal by filing a motion to set aside judgment and file an amended complaint, R.65, believing this to be the most procedurally proper, expeditious, and judicially efficient course of action. Rule 59(e) relief was warranted in this case to "prevent manifest injustice." *Intera Corp.*, 428 F.3d at 620. Yet, the district court thought otherwise, stating that it did "not find compelling Plaintiffs' explanation as to why they did not file a new action in lieu of filing the Motion to Set Aside Judgment . . ." Order, R.60, PageID#829 n.3. Thus, Plaintiffs filed *Lucy II* in accordance with the district court's stated preference, and the court denied as moot their motion under to set aside judgment and file an amended complaint. Order, R.65. This series of orders was an abuse of discretion.

"Amendment to establish jurisdiction is broadly permitted." *Miller v. Davis*, 507 F.2d 308, 311 (6th Cir. 1974). Amendment was particularly warranted here in light of Rule 15's instruction to "freely give leave [to amend pleadings] when justice so requires," *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (citing Rule

15(a)(2)), as well as under statute. *See* 28 U.S.C. § 1653; *see also Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

First, and most importantly, amendment would not have been futile. The Court dismissed Plaintiffs' action only because it concluded that Plaintiffs had not plausibly alleged that their removal orders are valid and outstanding, and the amended complaint alleged exactly that. Am. Compl., R.52-1.

Second, this was Plaintiffs' first request to amend their complaint, and courts regularly permit plaintiffs numerous opportunities to amend their pleadings.

Third, Defendants would not have suffered undue prejudice, as the amended complaint was nearly identical to the Complaint.

Fourth, Plaintiffs did not engage in undue delay or act in bad faith in requesting leave to amend. Plaintiffs contested Defendants' standing arguments because the evidence established that the removal orders were valid and outstanding. *See* PI Reply, R.40, PageID#416. And Plaintiffs would have filed an amended complaint after the PI Order was issued, but judgment was entered the same day, which left no opportunity to amend. *See Morse*, 290 F.3d at 800 (recognizing that post-judgment amendment serves to permit correction once the court has identified the complaint's deficiencies).

Pressuring Plaintiffs to file a new action raising identical claims against identical defendants has further delayed resolution of the merits while wasting judicial resources and exposing Plaintiffs to the risk of arrest and prosecution under a likely preempted law. Instead, the Court should have simply granted Plaintiffs' plainly meritorious effort to amend their complaint. *See Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (stating that the purpose of Rule 59(e) is to spare the parties and courts "the burden of unnecessary appellate proceedings") (citation omitted).

## CONCLUSION

This Court should reverse the district court's finding that Plaintiffs' removal orders are not valid and outstanding and grant the preliminary injunction. It should extend this relief to a putative class or, in the alternative, remand to the district court to determine the scope of relief.

The Court should vacate the dismissal for lack of subject matter jurisdiction and remand to the district court for further proceedings consistent with its order.

Date: September 11, 2026

Respectfully submitted,

/s/ *Noor Zafar*
Noor Zafar
Grace Choi
Omar Jadwat
American Civil Liberties Union
Foundation Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2660
nzafar@aclu.org
gchoi@aclu.org
ojadwat@aclu.org

Hannah Steinberg
Cody Wofsy
Oscar Sarabia Roman
American Civil Liberties Union
Foundation Immigrants' Rights
Project
425 California Street, 7th Floor
San Francisco, CA 94104
Tel: (415) 343-0770
hsteinberg@aclu.org
cwofsy@aclu.org
osarabia@aclu.org

Lucas Cameron-Vaughn (BPR# 036284)
Zee Scout (BPR# 042637)
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, Tennessee 37212
Tel: (615) 320-7260
lucas@aclu-tn.org
zscout@aclu-tn.org

Peter McGraw
Efrén Olivares
Kevin Siegel
National Immigration Law Center
1101 14th Street, Suite 410
Washington, D.C. 20005
Tel: (213) 639-3900
mcgraw@nilc.org
olivares@nilc.org
siegel@nilc.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the limitation set forth in Federal Rules of Appellate Procedure 27(b)(3) because it contains 12,919 words, exclusive of the portions of the brief that are exempted by Rule 32(f). I certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: September 11, 2026

/s/ *Noor Zafar*
Noor Zafar

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, I electronically filed the foregoing Motion with the Clerk for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

Date: September 11, 2026

/s/ *Noor Zafar*
Noor Zafar

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

***Lucy, et al. v. Skrmetti, et al.*, Middle District of Tennessee,**

**Case No. 3:26-cv-00763**

| Docket Number | Description | Page ID |
|---|---|---|
| 1 | Complaint | 1-17 |
| 6 | Plaintiffs' Motion for Preliminary Injunction | 54-78 |
| 6-1 | Declaration of Lucy | 79-83 |
| 6-2 | Declaration of Benjamin | 84-86 |
| 7 | Plaintiffs' Motion to Certify Class and to Appoint Class Counsel and Exhibits | 87-121 |
| 8 | Plaintiffs' Motion to Proceed Pseudonymously | 122-36 |
| 11 | June 5, 2026 Order Setting Briefing Schedule | 170-71 |
| 16 | Defendants' Motion for Expedited Discovery and Extension of Deadlines | 176-80 |
| 17 | Memorandum of Law in Support of Defendants' Motion for Expedited Discovery and Extension of Deadlines | 181-89 |
| 18 | Plaintiffs' Opposition to Motion for Expedited Discovery and Extension of Deadlines and Exhibit | 190-225 |
| 22 | June 11, 2026 Order on Defendants' Motion for Expedited Discovery | 235-41 |
| 25 | Defendants' Opposition to Motion for Preliminary Injunction | 252-93 |
| 27 | Stipulated Protective Order | 295-302 |
| 30 | Statement of Interest by the United States of America | 310-27 |
| 35 | Defendants' Opposition to Motion to Certify Class | 369-95 |
| 40 | Plaintiffs' Reply in Support of Motion for Preliminary Injunction | 414-29 |
| 45 | Plaintiffs' Reply in Support of Motion to Certify Class | 681-700 |
| 47 | Memorandum Opinion of the Court | 701-38 |
| 48 | Order Dismissing Case | 739-41 |
| 49 | Entry of Judgment | 742 |
| 52 | Plaintiffs' Motion to Set Aside Judgment and to File First Amended Complaint | 746-55 |
| 52-1 | Proposed Amended Complaint | 756-76 |

| | | |
|---|---|---|
| 55 | Plaintiffs' Motion for Reconsideration or, in the alternative, Renewed Motion for Preliminary Injunction and Class Certification | 785-808 |
| 56 | Plaintiffs' Motion to Expedite Motion to Set Aside Judgment | 809-12 |
| 57 | July 9, 2026 Order for Plaintiffs to Respond | 813-15 |
| 58 | Plaintiffs' Response to July 9, 2026 Order | 816-20 |
| 60 | July 14, 2026 Order Denying Motion to Expedite Motion to Set Aside Judgment | 826-32 |
| 61 | Plaintiffs' Notice of Filing and Exhibit | 833-87 |
| 62 | Plaintiffs' Motion for Leave to File Document Under Seal and Redacted Exhibits | 888-1177 |
| 63 | Sealed Document | N/A |
| 64 | Sealed Document | N/A |
| 65 | July 20, 2026 Order Denying Plaintiffs' Motions | 1458-59 |
| 67 | Notice of Appeal | 1466-68 |